# T–SHIRT WORLD, INC., Plaintiff

## v.

# ARTLAND, INC., Defendant

Civil No. 81-310

District Court of the Virgin Islands

Div. of St. Thomas and St. John

August 13, 1982

JOHN J. MAHON, ESQ., St. Thomas, V.I., *for plaintiff*

MARSHALL A. BELL, ESQ., St. Thomas, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

The plaintiff ("T-Shirt World") seeks to enjoin the defendant ("Artland") from infringing on the copyright claimed by T-Shirt World in certain designs. The designs are placed on various kinds of shirts and then sold, largely to tourists in St. Thomas. Before the hearing was held on the petition for a preliminary injunction, the parties entered into a stipulation whereby Artland, including its officers, directors, agents, stockholders, servants and employees, agreed not to infringe "upon the copyright of the plaintiff in any manner". Artland also agreed to be enjoined from manufacturing, distributing, selling, marketing, advertising or otherwise using copies of T-Shirt World's copyrighted work. The copyright claimed by T-Shirt World covered certain designs of a pen and ink nature where were transferred by a "plastisal" method to the shirts.

After the stipulation was signed by counsel for the parties and approved by order of the Court on February 22, 1982, T-Shirt World brought an order to show cause why Artland should not be held in contempt for violation of the order and the stipulation. It seems that Artland was alleged to be selling shirts with the claimed designs on them, but that the designs were embroidered on the shirts instead of being transferred by the plastisal method.

A hearing was held on June 16, 1982, on the show cause order, and certain exhibits were received in evidence. The parties were requested to brief the issue of whether the use of the same designs embroidered on the shirts instead of placed on the shirts by the plastisal method constituted enough of a change in the original design concept to warrant denial of T-Shirt World's application for relief.

Having received the memoranda from the parties, the Court finds that (1) T-Shirt World has a valid copyright to the designs described in its complaint; (2) the designs used by Artland are identical to the designs protected by T-Shirt World's copyright; and (3) the embroidered method of placing the design on the fabric does not represent

228

such a variation from the design of T-Shirt World to effectuate the removal of the design from copyright protection.

Accordingly, T-Shirt World will be granted relief by way of a preliminary injunction which will supercede the previous stipulation and order.

## I. THE ISSUES OF COPYRIGHT INFRINGEMENT

T-Shirt World has, for several years, marketed shirts in St. Thomas with a variety of specific designs. To protect itself, in May 1981, T-Shirt World obtained a copyright of its designs. The designs in question are pen and ink drawings, including a sailboat to seagulls as well as other varieties of boats and birds. The drawings are then transferred by a plastisal process to become emblems on shirts and are then sold to the public. T-Shirt World claims that after it received the copyrights to the various designs, it discovered that Artland was using the same designs and transferring them to its shirts in the same fashion.

T-Shirt World brought this action for copyright infringement and injunctive relief. Before the hearing for a preliminary injunction, the parties entered into the stipulation described earlier, and the order entered on February 22, 1982, was essentially an order enforcing the stipulation. Soon thereafter, however, T-Shirt World returned to this Court claiming a violation of that stipulation and order. It seems that after February 12, 1982, Artland continued to make use of the designs, but substituted an embroidered process for the plastisal process.

At the hearing, and in subsequent memoranda, Artland asserted that this change in methodology was sufficiently creative to nullify the T-Shirt World copyright, and that this took it outside of the stipulation and the order. To complicate matters further, Artland has obtained its own copyright of an embroidered design on a shirt, and claims to be acting under the rights created by that copyright. Entered into evidence were two exhibits: (1) a blue shirt showing a sailboat embroidered thereon and (2) a blue shirt showing a sailboat impressed thereon by the plastisal process. Both shirts have the words "St. Thomas" and "Virgin Islands" in the same locations above and below the design, respectively.

The first exhibit is the Artland shirt, the second is the T-Shirt World product. There is no question, when viewed with the naked eye, that the sailboat is the same design on both shirts, albeit on a larger scale on the Artland shirt. Exhibit 1 is the T-Shirt World design embroidered on an Artland shirt. Exhibit 2 is the T-Shirt

World design imprinted on its own shirt. It is obvious that Artland has used the T-Shirt World design.

We must now decide whether the different transfer process, i.e., embroidery as opposed to plastisal, takes the Artland product outside of the copyright protection afforded T-Shirt World. We find, based on the applicable law, that it does not.

Judge Learned Hand set the standard for copyright infringement in the oft-quoted case of Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960), wherein he noted that the question of copying of a design must be decided on an ad hoc or case by case basis:

> No one disputes that the copyright extends beyond a photographic reproduction of the design, but one cannot say how far an imitator must depart from an undeviating reproduction to escape infringement.

■■ Part of the consideration, he pointed out, was the use for which the design was intended. In the case at issue, the design was, in all instances, intended to be placed upon shirts to be sold to tourists. If the ordinary observer would regard the aesthetic appeal as the same, protection will be given, unless there are variants irrelevant to the purposes for which the design was intended. Peter Pan Fabrics, supra at 489. No such variants exist between the embroidered design and that imprinted by the plastisal method.

■ The same question was asked in a different way in the most learned treatise on the subject. Does the mere reproduction, in three dimensions, of a two dimensional work constitute a contribution of sufficient originality so as to render the reproduction copyrightable? 1 M. Nimmer on Copyright § 2.08(C)(2) at 98 (1978). The answer is that it depends on whether the manner of executing the work in three dimensions is the result of independent effort. That is, the mere act of converting two dimensions to three dimensions, although it creates a distinguishing variation, may not represent a contribution of independent effort.

Thus, the holding of this Court is that the use of embroidery as an alternative to plastisal transfer, where the same basic design is utilized, does not constitute the kind of variation which warrants protection from a claim of copyright infringement.

"Good eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts." Couleur International Ltd. v. Opulent Fabrics, Inc., 330 F.Supp. 152, 153 (S.D. N.Y. 1971).

■ The fact that the Artland design is made of a different dimension than T-Shirt World's sailboat is of no consequence. What is important is that it does not represent a substantial variation. L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490–491 (2nd Cir. 1976).

## II. THE ISSUE OF CONTEMPT

From the findings discussed, it is clear that Artland used the T-Shirt World design. T-Shirt World seeks an order holding Artland in contempt for that use in violation of the stipulation and order of this Court. The stipulation barred Artland from infringing upon plaintiff's copyright "in any manner" or "otherwise using plaintiff's copyrighted work".

However, the stipulation described plaintiff's copyrighted work in more limited fashion than it was required to do. It defined the work as follows:

> . . . the nature of the plaintiff's copyrighted work is pen and ink drawing—plastisal transfer.

■ Having so defined the meaning for purposes of the stipulation, the Court cannot find Artland in contempt of court for a violation when it used embroidery and not plastisal. The Court, before holding a party in contempt, would be required to find a clear violation, and this it cannot do.

■ Accordingly, no contempt will be issued, but the Court will, by its preliminary injunction, enjoin any and all use of the plaintiff's designs during the pendency of this action. By this language, it will be clear to both parties that no method of transfer of the design to the fabric or any other material, whether embroidery or plastisal or otherwise, will take the act outside the injunction.

## CONCLUSION

For the reasons stated herein, the Court will enter an order preliminarily enjoining Artland from use of the copyrighted designs described and enumerated by T-Shirt World in its verified complaint. Such an order will also declare the copyright obtained by Artland to be invalid.

From what has been said in this opinion, it is clear that T-Shirt World had an excellent chance of prevailing on the merits. Further, because of the difficulty in measuring the damages if T-Shirt World does prevail, it would be a Pyrrhic victory if the preliminary injunction was not issued. There would be no reliable method of measuring the damages from the number of sales of shirts with the embroi-

dered design, and whether those sales would have taken place otherwise. Thus, the potential for irreparable injuries and the lack of an adequate remedy at law are obvious. Further, the question of comparable hardship to Artland from the preliminary injunction can be alleviated by the simple decision to substitute different designs for the designs now enjoined, and production and sales can thereby continue.