**PETER PAN FABRICS, INC. and Henry Glass & Co., Plaintiffs,**

v.

**ROSSTEX FABRICS, INC. and Martin Ross, Defendants.**

**No. 86 Civ. 3673 (DNE).**

United States District Court, S.D. New York.

March 15, 1990.

---

Helfat & Helfat, New York City (Bernard A. Helfat, of counsel), for plaintiffs.

Silberberg, Stonehill & Goldsmith, New York City (Kenneth R. Schacter, of counsel), for defendants.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This is an action for copyright infringement. Plaintiffs allege that defendants copied their design, "Style 1403, Range 100, Patt. 14261X" for which the Register of Copyrights issued Copyright No. VA 218-543.[1] This design is printed on fabric and sold by plaintiffs.

Defendants move under Rule 56, Fed.R. Civ.P., for summary judgment dismissing the complaint on the ground that plaintiffs' copyright is invalid. Plaintiffs cross-move for summary judgment granting them a permanent injunction against defendants and damages. For the reasons stated below, defendants' motion for summary judgment is denied and plaintiffs' cross-motion for summary judgment is granted.

## I. BACKGROUND

A. The Parties

Plaintiff Peter Pan Fabrics, Inc. ("Peter Pan") is the wholly-owned subsidiary of Henry–Glass & Co. ("Glass") which is a converter of fabrics. For purposes of this action, these two plaintiffs will be treated as one entity.

Defendant Rosstex Fabrics, Inc. ("Rosstex") is also a converter of fabrics. Defendant Martin Ross is the president, a director and major stockholder of Rosstex who personally participated in the copying, printing and sale of the fabric in issue.

B. The Facts

In March 1985, Penny Watts, an agent for Harmer Munro, a textile design studio in London, England, sold to Glass for $275 a design which was the original creation of Harmer Munro. Prior to its sale to Glass, the design was not shown to any other persons except on a confidential basis for sale purposes. Upon the sale of the design, Harmer Munro and its employees renounced all title, right or interest therein. When a question was raised by defendant Rosstex as to Glass' ownership of the design, a duly acknowledged bill of sale was executed by Penny Watts.

After the purchase of the design from Penny Watts, Zelma Goldstein, a Vice–President of Glass who is the head of its design department, had her staff prepare a new design known as "Style 1403, Range 110, Patt. 14261X" which was based on the design she had purchased from Penny Watts. Ms. Goldstein is unable to recall precisely what changes were made in the Harmer Munro design, but she does know that some changes were made, that stripes across the lower portion of the design were omitted, and that the design was put in repeat.

The printed fabric was then created from the painting in repeat. Neither the design purchased from Watts nor the painting made by Glass' design studio can be located. Plaintiffs contend that the new design in the fabric is derived from the design it purchased from Harmer Munro, but that Munro was not the author of the completed design plaintiffs filed with the Copyright Office.

1. After large quantities of the design had been sold, plaintiffs learned that the defendants had copied the design. In the course of preparing the commencement of the instant action, plaintiffs discovered that as a result of what they allege was a clerical error, no application for registration of the copyright had been filed. At that time a copyright application was prepared and filed on an expedited basis.

Plaintiffs' affidavits demonstrate that putting a design in repeat requires repainting the design to change its size, and often its spacing, so that the design, or a multiple of the design, fits the screen or roller to be used to print it on fabric, and that one end of the design matches the other end precisely, making possible the printing of a roll of fabric with a continuous design. In the course of repainting a design like the one at issue the irregular edges of the spots as painted in repeat will vary from the original painting and the spatial relationship of the various spots will be slightly altered.

The fabric was first offered for sale June 21, 1985. After selling large quantities of the new design, Glass learned that the new design had been copied by defendants. A copyright application was filed and a copyright was issued April 24, 1986.[2]

## II. MOTIONS FOR SUMMARY JUDGMENT

A. Defendants' Motion for Summary Judgment

Defendants contend that plaintiffs' copyright is invalid and that summary judgment dismissing the action is warranted based on the following:

1. The alleged copyright is invalid because the new design is not an "original" work.

2. The alleged copyright is invalid because, even if the new design was somewhat different from the Harmer Munro painting from which it was derived, it is not sufficiently different to be eligible for copyright protection.

3. The alleged copyright is invalid because even if some elements of the new design were sufficiently different from the Harmer Munro painting to be eligible for copyright protection, the Harmer Munro painting has been destroyed. Accordingly, plaintiffs cannot meet their burden of proving which elements (if any) of the new design were different enough to be protected and which elements were merely copied.

4. The copyright ownership in the Harmer Munro painting was not transferred to Peter Pan by means of a legally sufficient writing.

Defendants' arguments lend credence to the adage "less is more." In fact, defendants' motion papers exemplify the corollary, "more is less." However, each of defendants' contentions will be addressed.

■ Defendants first argue that plaintiffs' copyright is invalid because the new design was not an original work. However, the deposition testimony of Zelma Goldstein belies this contention. Ms. Goldstein testified that she modified the Harmer Munro design by eliminating the stripes and altering the size and layout of the dashes and by putting the design into repeat.

Putting a design in repeat requires some altering of the size and layout so that repeats of the design fit the screen used to print it. Defendants' argument that plaintiffs added nothing original to the design is based on a misinterpretation of Ms. Goldstein's deposition testimony. Moreover, the law in this circuit with regard to textile designs is clear:

> The embellishment or expansion of the original design in repeat, so as to broaden the design and thereby cover a bolt of cloth, together with beginning the pattern in a particular way so as to avoid showing an unsightly joint when the pattern is printed on textiles on a continual basis, constitutes modest but sufficient originality so as to support the copyright.

*Soptra Fabrics, Corp. v. Stafford Knitting Mills, Inc.,* 490 F.2d 1092, 1094 (2d Cir.1974) citing *Peter Pan Fabrics v. Dan River Mills,* 295 F.Supp. 1366 (S.D.N.Y.), aff'd, 415 F.2d 1007 (1969) (per curiam). The minimal degree of originality required to support a copyright in the textile field, where the design printed is original, is "not very high." *Soptra,* 1092 F.2d at 1094. Thus, defendants' argument of lack of originality is spurious. Plaintiffs' design is original under the law in this circuit.

2.  (*See* footnote 1, *supra* ).

■ Defendants' second argument is that even if original, the design is not sufficiently different to be eligible for copyright protection. Defendants base this contention on 17 U.S.C. §§ 101, 103.

According to Nimmer,

"a work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of a copyright proprietor of such preexisting work. It is saved from being an infringing work only because the borrowed or copied material was taken with the consent of the copyright owner of the prior work or because the prior work has entered the public domain."

*Nimmer on Copyright* § 3.01, p. 3–3. From this comment it is clear that a work is derivative only if it takes from a work already covered by copyright or which is in the public domain. See *Nimmer on Copyright* §§ 3.04, 3.06. The cases cited by defendants are not dispositive insofar as they deal with works already copyrighted or in the public domain. *See Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir. 1983); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.1976). Because Harmer Munro never copyrighted the design nor was the work ever in the public domain,[3] the copyright in issue is not a derivative work with the meaning of 17 U.S.C. §§ 101, 103. Accordingly, defendants' second argument is unconvincing.

■ Defendants' third argument is that because plaintiffs destroyed the painting the plaintiffs cannot prove which elements of their design were protected. Plaintiffs' affidavits demonstrate the sheer volume of designs created by them and the number of draft materials purchased to generate these designs. Defendants have not proven a motive for destroying the Harmer Munro painting which would contradict plaintiffs' allegation that it was destroyed merely to save space.

In the instant case, the destroyed design was an unpublished design which was the property of plaintiffs. It is inconceivable that defendants argue that they could have acquired any rights to use the design—which they admittedly copied—based on an argument that destruction of the painting vitiates plaintiffs' copyright.

Furthermore, defendants' contention is contrary to the holding in *Dan River Mills*, 295 F.Supp. at 1368, where a slight modification of a design to put it into repeat satisfied the originality test. Because the design was put into repeat, a finding of originality in the instant case is warranted. As a result, plaintiffs need not produce the painting to prove the design's originality. Accordingly, defendants' contentions are unavailing in this regard.

■ Finally, defendants inexplicably assert that a copyright in the Munro painting was not transferred to plaintiffs by a reasonably sufficient writing—despite the fact that the Munro work was never copyrighted. This argument can be dealt with in short order. As defendants correctly assert, "a transfer of copyright ownership ... is not valid unless an instrument of conveyance or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Moreover, the Copyright Act provides that transfer of ownership of a material object does not convey rights in a copyrighted work. 17 U.S.C. § 202. Defendants cite legislative history of 17 U.S.C. § 202 suggesting that a bill of sale would be insufficient to transfer a copyright from Munro to plaintiff. On its face this assertion is absolutely correct. However, it is a specious argument, inapposite to the facts at hand.

In order to transfer ownership of a copyright, a written instrument of transfer must be executed. No such valid writing exists in this case. However, no such writing exists because this is not a case of transfer of copyright. Rather, an uncopyrighted painting was sold to plaintiffs with a transfer of all rights. At all times the

---

**3.** According to Penny Watts, prior to its sale to Glass the Munro work was not shown to any other persons except on a confidential basis for sale purposes.

copyright has been plaintiffs', never Harmer Munro's. Sections 202 and 204 of the Copyright Act apply to an assignment of an existing copyright. In the instant case, plaintiffs are not assignees of an existing copyright but are copyright owners. Defendants' argument distorts the facts and the law and is meritless.

None of the four arguments addressing the validity of the copyright persuade this court that plaintiffs' copyright fails. Accordingly, defendants' motion for summary judgment on the ground that the copyright is invalid is denied.[4]

### B. Plaintiffs Cross–Motion for Summary Judgment

▇ The central question at issue in plaintiffs' motion is the validity of plaintiffs' copyright. Plaintiffs have provided the court with a copy of copyright certificate VA 218–543 issued to Peter Pan covering "Style 1403, Range 110, Patt. 14261X." Pursuant to Section 410(a) of the Copyright Act, a certificate constitutes prima facie evidence of the validity of the copyright. Defendants have made no showing to the contrary. Accordingly, the copyright is deemed valid.[5] *See Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 911 (2d Cir.1980); *Dollcraft Industries, Ltd. v. Well–Made Toy Mfg. Co.,* 479 F.Supp. 1105, 1114 (E.D.N.Y.1978); *United Merchants & Manufacturers Inc. v. Sarne Company,* 278 F.Supp. 162, 164 (S.D.N.Y.1967).

When a prima facie case of infringement has been made, a plaintiff is entitled to injunctive relief. *See Malden Mills, Inc. v. Regency Mills, Inc.,* 626 F.2d 1112 (2d Cir. 1980); *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,* 490 F.2d 1092 (2d Cir.1974); *Peter Pan Fabrics Inc., et al. v. Dixon Textile Corp.,* 280 F.2d 800 (2d Cir. 1960); *Peter Pan Fabrics Inc., et al. v. Martin Weiner Corp., et al.,* 173 F.Supp. 292 (S.D.N.Y.1959).

Plaintiffs have demonstrated that their design is original, that defendants had access to their design and that they copied it. Defendants have not set forth specific facts showing a genuine issue for trial.[6] Accordingly, plaintiffs' motion for summary judgment permanently enjoining defendants from further infringement of plaintiffs' copyright pursuant to Rule 56(e) Fed. R.Civ.P. is granted.

### III. DAMAGES

▇ Defendants caused approximately 31,000 yards of fabric imprinted with the infringing design to be manufactured and sold. The affidavit of Robert Finkelsteel, plaintiffs' president, with over 35 years of experience in the converting business, asserts that defendants' profits on the infringing fabric was at least $.30 per yard, and that if plaintiff had sold the same quantity of fabric at its usual price, it would have made at least $.40 per yard.

Plaintiffs further aver that since defendants' profits at $.30 per yard for 31,000 yards were $9,300 and since plaintiffs' loss of profits, computed at $.43 per yard is $13,330, plaintiffs are entitled to recover from defendants the total amount of $22,-630, excluding any claim for statutory damages and attorney fees.

In their reply papers, defendants assert that a motion for summary judgment is an inappropriate vehicle for asserting damages. Defendants further contend that the suggested profit of $.30 per yard is inaccurate. Rather, they contend that their actual profits were no more than $5,705.20 an amount which is approximately $3,700 less than plaintiffs' asserted amount.

Section 504(b) of the Copyright Act reads as follows:

"Actual Damages and Profits—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any

---

**4.** Defendants' jurisdictional argument is premised on the validity of the fourth contention of the insufficiency of the transfer of the copyright. Because this contention is invalid, the court need not address an extension of it.

**5.** Defendants admit copying a design given to them by a customer. Moreover, in this instance it is clear that the defendants' design is in all respects identical to plaintiffs' design.

**6.** *See* Rule 56(e) Fed.R.Civ.P.

profits of the infringer that are not attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the element of profit attributable to factors other than the copyrighted work."

Plaintiffs cite a case which they contend is directly on point where recovery of both the profits of the infringer and the profits of the copyright owner would have realized on the same sales. *Design Resources Inc. v. John Wolf Decorative Fabrics*, 83 Civ. 7606 (CBM) pp. 14–20, 1985 WL 2445 relying on *Lottie Joplin Thomas Trust v. Crown Publishers*, 592 F.2d 651, 657 (2d Cir.1978). In *Design Resources*, however, the price of the two fabrics at issue was only slightly different. In the instant case, the prices are more than slightly different with plaintiffs selling a higher priced good. Thus, there is a question of how many customers of defendants would have been shared with plaintiffs. This question needs to be answered before plaintiffs' actual damages can be calculated. Moreover, the court does not wish to rely solely on plaintiffs' affidavits in fixing damages. As Judge Feinberg noted in *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir.1985), an award made pursuant to § 504 must not be based upon undue speculation and must not entail the double counting of profits and damages expressly barred by that provision.

At this juncture the court will defer ruling on the damages issue and will direct that this case be referred to a Magistrate for an inquest on damages appropriate in this case. Accordingly, upon Report and Recommendation of the Magistrate, the court can determine, in accord with Section 504 of the Copyright Act, plaintiffs' actual damages, and profits of the infringer which are not taken into account in computing plaintiffs' actual damages.

## CONCLUSION

Defendants' motion for summary judgment is denied. Plaintiffs' cross-motion for summary judgment granting them a permanent injunction against defendants is granted. Damages to be awarded plaintiffs will be determined after an inquest by a Magistrate.

SO ORDERED.